IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PATRICIA CABRERA,
         **Plaintiff,**

v.                                                                                                No.  15 CV 597 JCH/LF

WAL-MART STORES EAST, L.P.,
         **Defendant.**

## MEMORANDUM OPINION AND ORDER

This is a personal injury case stemming from a May 23, 2014 incident in which Plaintiff fell while exiting a Wal-Mart store in Albuquerque, New Mexico. Plaintiff claims that she tripped on a transition strip between two different types of tile that was in a state of disrepair and sustained severe injuries. This matter comes before the Court on Defendant Wal-Mart's Motion for Summary Judgment as to Plaintiff's claims **[Doc. 34]**, Defendant Wal-Mart's Global Motion in Limine **[Doc. 40]**, Defendant Wal-Mart's Motion in Limine to Exclude Plaintiff From Testifying Regarding the Cause of Her Fall **[Doc. 41]**, and Defendant Wal-Mart's Motion in Limine to Exclude Testimony of Plaintiff's Expert Ronald Beethe **[Doc. 42]**. Having reviewed the motions, briefs, and relevant law, the Court concludes that it will defer ruling on Defendant's Global Motion in Limine until trial and that Defendant's remaining motions will be denied.

**I.    BACKGROUND**

Plaintiff's complaint alleges that as she exited the Wal-Mart store on Coors in Albuquerque, New Mexico on May 23, 2014, she tripped on a raised transition strip or threshold, which she described as being in disrepair. **[Doc. 34-1, p. 2]** Plaintiff testified during her deposition that she remembered one foot catching on the metal transition strip, and her right foot sliding out in front of her, but she did not know at the time what was happening or

recall which foot got caught. **[Doc. 34-3, p. 4-6]** She testified that after watching surveillance video of the incident, however, it was apparent that it was her left foot that got caught on the transition, causing her right foot to slide forward and her to land on and injure her left knee. **[Doc. 34-3, p. 4-6]** Although the transition strip is not visible in the video, Plaintiff testified that she believes it to be the cause of her trip and fall because she "tripped immediately after crossing [the transition]." **[Doc. 34-3, p. 7]** Plaintiff does not believe it was likely that she could have just slipped or tripped on the flip flops she was wearing that day. **[Doc. 34-3, p.9]** After her fall, Plaintiff instructed her friend to take pictures of the area, including the transition strip. **[Doc. 34-3, p. 8]** A store manager completed an incident report which stated that Plaintiff's foot slipped on the tile. **[Doc. 39-2, p. 3]** Plaintiff added the words "transition to tile" above the manager's writing. **[Doc. 39-2, pp. 1, 3]**

Plaintiff retained hazard analysis expert Ronald Beethe to evaluate whether the transition strip constituted a tripping hazard. **[Doc 47, p. 2]** Mr. Beethe has a Bachelor of Science degree and a Master of Science degree in Mechanical Engineering. **[Doc. 47-4, p. 1]** For over thirty years, Mr. Beethe has been board-certified in the practice of industrial hygiene, which is "the science devoted to the anticipation, recognition, evaluation, and control of agents that may cause injury or impaired well-being among workers or among citizens of the community." **[Doc. 47-4, p. 1]** His areas of competence are in "accident investigation, regulatory compliance analysis and auditing, risk assessment, occupational safety, and occupational health." **[Doc. 47-4, p. 1]** He has run his own Environmental Health and Safety consulting practice for the last twenty years, and for the sixteen years prior to that he worked for other companies, performing safety audits, providing safety training, and implementing regulatory compliance programs. **[Doc. 47-4, pp. 1-2]** He is a member of several industrial

hygiene and health physics associations, has completed specialized training in the field, and has participated as an expert in multiple other lawsuits. **[Doc. 47-4, p. 2-3]**

On August 27, 2015, as part of his investigation in this case, Mr. Beethe met with Plaintiff at the store where she fell. **[Doc. 47-5, pp. 1-2]** He observed the area and took measurements of the aluminum transition strip and a space where a piece of tile was missing. **[Doc. 47-5, p. 5]** According to Mr. Beethe's measurements, the raised portion of the transition strip measured 0.24 inch high at its highest point. **[Doc. 34-7, p. 1]** Mr. Beethe testified at his deposition that various building standards and regulations require beveling or other remediation of changes in elevation of 0.25 inch or more. **[Doc. 34-5, pp. 13-16]** Mr. Beethe concluded that, although the regulations do not necessarily require remediation of the 0.24 inch change in elevation here, the "damaged aluminum transition strip has raised lips … that present potential trip hazards," especially in light of how smooth the surrounding surface is. **[Doc. 34-5, p. 4]**

Mr. Beethe also reviewed photos of the area that were taken the day Plaintiff fell, approximately fifteen months prior to his visit. **[Doc. 34-5, pp. 5-6]** Mr. Beethe concluded that the transition strip was raised in those photographs based on the debris that appeared to be gathered against the strip. **[Doc. 34-5, p. 6]** From the photographs he also observed that the placement of merchandise near the store exit directed customers to walk toward and over the trip hazard and made it more likely that someone would trip. **[Doc. 47-5, p. 7]** Further, on his visit to the store, Mr. Beethe observed unrepaired broken tiles and that the transition strip had not been replaced in the fifteen months since Plaintiff's fall, from which he concluded that Defendant exercised a poor standard of care for the walking surface in the area. **[Doc. 47-5, p. 8]**

## II.   MOTIONS IN LIMINE

Defendant has filed three motions in limine to preclude Plaintiff from introducing certain testimony at trial. The Court considers each in turn.

### A. Defendant Wal-Mart's Global Motion in Limine

Defendant moves this Court to issue an order precluding the parties from presenting twenty categories of evidence and arguments. **[Doc 40]** The Court advises the parties that it will adhere to the Federal Rules of Evidence and defers ruling on the items included in Defendant's Global Motion in Limine **[Doc. 40]** until trial. *See Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975) ("Orders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise.").

### B. Defendant Wal-Mart's Motion in Limine to Exclude Testimony of Plaintiff's Expert Ronald Beethe

Defendant argues that Plaintiff's expert witness, Ronald Beethe, should not be allowed to testify at trial because his opinions are not relevant, do not meet the requirements for admissibility of expert testimony, and would be unfairly prejudicial. **[Doc 42]**

Defendant specifically takes issue with Mr. Beethe's conclusion that the transition strip was a potential trip hazard because Mr. Beethe did not measure the strip until fifteen months after the incident. **[Doc. 42, p. 6]** Defendant argues that this conclusion is not relevant because Mr. Beethe does not know for sure whether Plaintiff actually tripped over the transition strip. **[Doc. 42, p. 6]** Defendant also contends that any testimony concerning the missing piece of tile—which was not missing when Plaintiff fell in 2014, but was broken when Mr. Beethe measured in 2015—is not relevant to the issue of whether or not Defendant breached its duty to Plaintiff in 2014. **[Doc. 42, p. 10]** Defendant argues that Mr. Beethe's testimony that the floor

4

damage and placement of merchandise in walkways increases the likelihood that customers will fall is speculative, unreliable, and unfairly prejudicial because Mr. Beethe did not conduct statistical analyses or calculate mathematical probabilities based on the number of customers who use the exit or any actual increase in falls. **[Doc. 42, pp. 11-15]** Finally, Defendant argues that a portion of Mr. Beethe's report which contains recommendations for preventing future falls should be excluded as irrelevant. **[Doc. 42, p. 16]** Plaintiff concedes that evidence of floor damage or conditions that did not exist when Plaintiff fell is not relevant to the issue of whether Defendant breached its duty to Plaintiff on May 23, 2014. **[Doc. 47, p. 28]** However, Plaintiff disagrees with Defendant's remaining arguments, contending that Mr. Beethe's testimony is relevant, reliable, and will assist the trier of fact. **[Doc. 47]**

> Federal Rule of Evidence 702 provides:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Thus, when considering the admissibility of expert testimony, a trial court's task is to ensure that the "expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597, 113 S. Ct. 2786, 2799, 125 L. Ed. 2d 469 (1993). In evaluating reliability, some factors a court may consider include "testing, peer review, error rates, and 'acceptability' in the relevant scientific community." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 1171 (1999) (citing

*Daubert*, 509 U.S. at 593-94). However, none of those factors are necessarily determinative or applicable in every case, and trial courts have broad latitude in deciding *how* to assess reliability, as well as in making the ultimate determination of reliability. *Kumho Tire*, 526 U.S. at 141-42. "The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595, 113 S. Ct. 2786.

Under Federal Rule of Evidence 401, relevant evidence is that which "has any tendency to make a fact more or less probable than it would be without the evidence," where that "fact is of consequence in determining the action." Even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. And although the district court has broad discretion in weighing evidence under Rule 403's balancing test, exclusion of otherwise admissible, relevant evidence remains "an extraordinary remedy and should be used sparingly." *United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001) (internal quotation marks and citation omitted). Accordingly, "the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1274 (10th Cir. 2000) (internal quotation marks and citation omitted).

Mr. Beethe has over thirty years of experience in the field of industrial hygiene. He has operated his own consulting practice for the last twenty years, advising building owners about safety risks and regulatory compliance. He has received and given training on different topics related to his field and is board-certified in the area of industrial hygiene. For these reasons, the Court concludes that Mr. Beethe possesses the requisite technical or specialized knowledge to provide testimony that will aid a jury in understanding applicable building codes and industrial safety standards and their practical application. Further, with regard to his testimony in this particular case, the Court is persuaded that Mr. Beethe reliably applied his specialized

knowledge and training to reach his conclusions. He considered the photos, surveillance video, and Plaintiff's account of what happened, and also conducted his own investigation of the scene of the incident. He then made conclusions based on his own experience and knowledge of potential safety hazards and building standards. His testimony is sufficiently reliable and will be relevant to the issue of whether the conditions present at the store created a dangerous situation.

Finally, because the evidence is reliable and relevant, the Court is not convinced that it presents a danger of unfair prejudice to Defendant. If the probative value of Mr. Beethe's testimony is in fact lessened by the passage of time between Plaintiff's fall and his investigation, or by a lack of citation to actual mathematical probabilities, Defendant will have the opportunity to present such an argument at trial. *Daubert*, 509 U.S. at 596, 113 S. Ct. 2786 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Accordingly, Defendant's motion in limine to exclude the testimony of Plaintiff's expert, Ronald Beethe, **[Doc. 42]** will be denied.

The Court recognizes, however, that there are portions of Mr. Beethe's testimony that may not be admissible. *See First Sav. Bank, F.S.B. v. U.S. Bancorp*, 117 F. Supp. 2d 1078, 1082 (D. Kan. 2000) ("Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial." (internal quotation marks and citation omitted)). For example, testimony concerning the condition of the floor or actions or omissions by Defendant subsequent to Plaintiff's fall would not be relevant. Additionally, testimony such as accident reconstruction opinions regarding the actual cause of Plaintiff's fall would exceed the bounds of Mr. Beethe's expertise and would therefore not be sufficiently reliable to be admissible as expert testimony. It is not clear to what extent Plaintiff intends to offer such

testimony, so the Court will reserve ruling on the admissibility of those specific opinions until trial. At this time, the Court will deny the motion to exclude Mr. Beethe from testifying altogether, but the parties are reminded that this ruling does not relieve them of their "responsibility of making objections, raising motions to strike or making formal offers of proof during the course of trial." *Thweatt v. Ontko*, 814 F.2d 1466, 1470 (10th Cir.1987) (internal citation omitted).

### C. Motion in Limine to Exclude Plaintiff's Testimony Regarding Causation

Defendant argues that Plaintiff should not be allowed to offer testimony that the raised transition strip was the cause of her fall because Plaintiff does not have personal knowledge of the matter as required by Federal Rules of Evidence 602 and 701. **[Doc. 41]** Defendant highlights portions of Plaintiff's deposition in which she testified that at the time she fell, she did not know what caused her to fall, but after watching the surveillance video it was evident that her left foot caught on the transition and caused her right foot to slide out in front of her. **[Doc. 41, pp. 2-3]** Defendant then argues that because the transition strip is not visible on the video she watched, Plaintiff's testimony shows that she has no personal knowledge of what caused her to fall. **[Doc. 41, p. 4]** Plaintiff responds that her opinion as to the cause of her fall is based on her own perception and is admissible. **[Doc. 45]**

Rule 602 provides, "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Personal knowledge is not limited only to actual observations, but "can include inferences and opinions, so long as they are grounded in personal observations and experience." *United States v. Rodriguez*, 162 F.3d 135, 144 (1st Cir. 1998) (internal quotation marks and citation omitted). Similarly, Rule 701 allows a non-expert witness to offer opinion testimony so long as it is "rationally based on the witness's perception."

Plaintiff has personal knowledge of the circumstances of her fall. She obviously observed and experienced the event first-hand. Although she has stated that she did not know what happened as she was falling, she has provided additional testimony describing what she observed in the surrounding area. From those observations, Plaintiff inferred that the damaged transition strip caused her to trip and fall. Defendant will, of course, be able to challenge the credibility of Plaintiff's inferences regarding causation through cross-examination. However, Plaintiff's testimony is rationally based on her perception of the event and observations of the surrounding area. Defendant Wal-Mart's Motion in Limine to Exclude Plaintiff From Testifying Regarding the Cause of Her Fall **[Doc. 41]** will be denied.

### III.    MOTION FOR SUMMARY JUDGMENT

Defendant challenges the sufficiency of the evidence presented in support of Plaintiff's allegations, arguing that "Plaintiff cannot establish that Wal-Mart breached any duty owed to Plaintiff or that any alleged breach caused Plaintiff's damages." **[Doc. 34, p.1]** The Court notes that Defendant has also challenged the admissibility of portions of Plaintiff's and Mr. Beethe's proffered testimony through motions in limine. The Court has concluded that those motions shall be denied for the reasons explained above, and accordingly considers their proposed testimony along with other evidence presented, for purposes of deciding the summary judgment motion.

### A. Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d

837, 839 (10th Cir. 1997). In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmovant. *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)).

When, as here, "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Cassara v. DAC Serv., Inc*., 276 F.3d 1210, 1212 (10th Cir. 2002) (internal quotation marks omitted). The burden then shifts to the opposing party to come forward with admissible evidence to create a genuine issue of material fact on that element. *See Bacchus Indus., Inc. v. Arvin Indus., Inc*., 939 F.2d 887, 891 (10th Cir. 1991).

### B. Analysis

Under New Mexico law, a plaintiff alleging a claim of negligence must establish the following elements: "(1) defendant's duty to the plaintiff, (2) breach of that duty, typically based on a reasonable standard of care, (3) injury to the plaintiff, and (4) the breach of duty as cause of the injury." *Zamora v. St. Vincent Hosp.*, 2014-NMSC-035, ¶ 22, 335 P.3d 1243, 1249. Defendant admits that it owed Plaintiff a duty of reasonable care in keeping the premises safe, and does not challenge whether or not Plaintiff sustained an injury. **[Doc. 34, p. 6]** Defendant's arguments in favor of summary judgment are thus limited to whether or not a reasonable jury could find that there was a breach of the duty of care and, if so, whether that breach was the cause of Plaintiff's injury.

### 1. Breach

In a slip and fall case, in order to demonstrate a breach, "a business visitor must prove that an owner or occupier of the premises failed to exercise ordinary care by rendering safe an

unreasonably dangerous condition on the premises known to, or discoverable upon reasonable investigation by, the owner or occupier." *Brooks v. K-Mart Corp.*, 1998-NMSC-028, ¶ 10, 125 N.M. 537, 540, 964 P.2d 98, 101. Here, Plaintiff argues that Defendant's failure to address the damaged transition strip constituted a breach of its duty to exercise reasonable care in maintaining safe premises.

Defendant specifically argues that there was no evidence of a breach of any duty because Plaintiff has not demonstrated that the "portion of the strip which allegedly caused her to fall was defectively raised in any manner" at the time the incident occurred. **[Doc. 34, p. 7]** However, as Plaintiff points out, she has provided pictures of the condition of the floor on the date of her fall and has testified that she observed that the transition strip appeared to be in a state of disrepair. **[Doc. 38, pp. 4-5]** Plaintiff has also offered the testimony of an expert, Mr. Beethe, who took measurements and photographs of the area and concluded that it presented a potential trip hazard. Defendant argues that because Mr. Beethe's investigation of the area did not occur until over a year later, it is not probative of whether Defendant breached its duty of care on the date Plaintiff fell. However, the Court concludes that the probative value of Mr. Beethe's testimony is a matter for a jury to assess in context with all other evidence presented at trial. The Court finds that Plaintiff has presented evidence sufficient to raise a genuine issue of material fact concerning the condition of the transition strip on the date she fell. The credibility of this evidence is a matter to be determined by a jury and not weighed by the Court on a motion for summary judgment.

Defendant also argues that even if the jury were to accept that Mr. Beethe's report was representative of the condition of the floor on the date of Plaintiff's fall, there still would be no breach because the measurement of the raised portion at its highest point was less than the elevation change allowable under applicable building standards, regulations, and codes. **[Doc.**

**34, pp. 9-10]** Plaintiff responds that she is not arguing under a theory of negligence *per se*, and therefore she does not have to prove a code violation to prevail on her claim of negligence. **[Doc. 38, p. 5]** The Court agrees with Plaintiff—even if the damage to the transition strip does not constitute negligence as a matter of law, it is still possible that a reasonable jury would find that there was a breach. *See Spencer v. Health Force, Inc.*, 2005-NMSC-002, ¶ 20, 137 N.M. 64, 70, 107 P.3d 504, 510 (recognizing that where "liability cannot be based on a failure to comply with the requirements in the statute, [a defendant] is not altogether relieved of its common law duty," rather "a reasonable diligence standard is appropriate"); *Cumming v. Nielson's, Inc.*, 1988-NMCA-095, ¶ 10, 108 N.M. 198, 201, 769 P.2d 732, 735 ("While violation of an industry standard may provide proof of breach of duty, the reverse is not necessarily true."); *Edwards v. CSX Transp. Inc.*, 821 F.3d 758, 762 (6th Cir. 2016) (noting that although the plaintiff failed to establish negligence per se by a violation of regulations, the plaintiff could still prove negligence by establishing that the defendant failed to exercise reasonable care). Mr. Beethe concluded that the raised transition strip presented a trip hazard, even though the change in elevation was 0.01 inch less than the maximum allowed under the building codes to which he cites. Whether this constitutes a breach of Defendant's duty to exercise ordinary care to maintain the safety of its premises is a question for the jury to answer.

For purposes of the summary judgment motion, the Court concludes that there is sufficient evidence to create a genuine issue of material fact with respect to the extent of the damage to the transition strip and whether it presented an unreasonable risk, such that it amounted to a breach of Defendant's duty to Plaintiff.

   2. Causation

Defendant argues that Plaintiff cannot demonstrate that Defendant's alleged breach was the cause of her injuries because there is no admissible evidence showing that she tripped on

the raised portion of the transition strip. **[Doc. 34, p. 10]** The Court concludes that Plaintiff's own testimony that she tripped over the transition strip is admissible evidence, as discussed above regarding Defendant's motion in limine to preclude Plaintiff from testifying concerning the cause of her fall. Defendant will, of course, be permitted to test the reliability of Plaintiff's testimony through cross examination, but Plaintiff has presented evidence sufficient to establish a genuine issue of material fact as to the cause of her fall.

Accordingly, the Court concludes that Defendant's Motion for Summary Judgment **[Doc. 34]** will be denied.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment **[Doc. 34]** is DENIED; the Court will defer ruling on Defendant's Global Motion in Limine **[Doc. 40]** until trial; Defendant Wal-Mart's Motion in Limine to Exclude Plaintiff From Testifying Regarding the Cause of Her Fall **[Doc. 41]** is DENIED; and Defendant's Motion in Limine to Exclude the Testimony of Plaintiff's Expert Ronald Beethe **[Doc. 42]** is DENIED.

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**